UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH WALDEN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE,<br><br>　　　　Defendant. | Case No. 12-cv-05359-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 9, 13 |

## INTRODUCTION

Plaintiff Kenneth Walden ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g), seeking judicial review of the decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 9, 13. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' papers, the administrative record ("AR") in this case, and relevant legal authority, the Court hereby DENIES Plaintiff's Motion and GRANTS Defendant's cross-motion for summary judgment for the reasons set forth below.

## BACKGROUND

Plaintiff is 56 years old. AR 26. He has a high school education and is literate. AR 26. He has previously worked as a driver; warehouse clerk and grocery shipping clerk. *Id*. Plaintiff claims several physical as well as mental impairments, including low back pain, obesity, diabetes mellitus, and depression. AR 725, 811.

**A.　Dr. Ford**

Dr. Larry Ford was Plaintiff's primary care provider from June of 2003 to April of 2006.

AR 493-567. Dr. Ford began treating Plaintiff for back pain on June 11, 2003. AR 517. Dr. Ford noted that the pain was "progressive since work accident on fork lift." *Id*. Dr. Ford diagnosed chronic back pain as a result of the prior work accident, and diabetes mellitus. AR 518. On August 20, 2004, Dr. Ford also diagnosed peripheral neuropathy. AR 504.

In May 2004, Dr. Ford noted that Plaintiff's blood sugar was 180. AR 515. In June 2004, Dr. Ford noted that Plaintiff's blood sugar was still high, but that Plaintiff had no acute problem. AR 514. In August 2004, Plaintiff's blood sugar was recorded at 202. AR 507. Plaintiff admitted that he was not exercising or dieting. *Id*. Later that month, Plaintiff reported during a diabetes evaluation that he was doing fairly well, though he failed to follow a diabetic diet and make the best food choices. AR 505-06. In September 2004, Plaintiff's sugar was 250-394, and his weight was 224. AR 498. Plaintiff reported his diet was still "bad." *Id*. In October of 2004, Plaintiff's sugar was 172, and his weight was 232. AR 493-94. The improvement was due to a higher dose of insulin. *Id*.

In March 2005, Plaintiff's sugar was 222. AR 558. In November 2005, Plaintiff again had high sugar at 275. AR 548. Dr. Ford prescribed metformin and lisinopril, and told Plaintiff to decrease sugar in his diet and increase exercise. *Id*. In October 2005, Plaintiff reported he was under stress because of the death of his son, and Dr. Ford's treatment notes reflect that Plaintiff's diabetes control was affected by the stress, though Plaintiff had no acute problems. AR 564.

On October 28, 2005, Dr. Ford examined Plaintiff and noted that Plaintiff had full range of motion in his back, no tenderness, palpable spasm or pain on motion, and was not in acute distress. AR 564. Plaintiff's diagnosis was diabetes, type 1, and neuropathy, peripheral sensory manifestation. *Id*. The last examination record is April 27, 2006, at which time Dr. Ford described Plaintiff as "alert, well-appearing, and in no acute distress." AR 562. Dr. Ford noted multiple complaints of foot pain had been resolved. AR 562. Between October 28, 2005 and April 29, 2006, Dr. Ford did not prescribe any pain medication to Plaintiff for back or neck pain. AR 562-564. Plaintiff is weighed 210 pounds in April of 2006. AR 562.

On August 29, 2006, Dr. Ford completed a residual functional capacity ("RFC") questionnaire in which he listed Plaintiff's diagnosis as diabetes mellitus type I with neuropathy

manifestations, hypertension, and obesity. AR 566. He opined that Plaintiff had several functional and postural limitations, including standing less than two hours in an eight hour workday; walking less than two hours in an eight hour workday; occasionally climb, balance, stoop, and crouch; but could never kneel or crawl. *Id.* Dr. Ford noted that the extent of Plaintiff's limitations would be "life-long since they are due to diabetes, which is a progressive disease." *Id.*

**B.    Dr. Amin**

In September of 2006, Farzana Amin, M.D. conducted a psychiatric evaluation of Plaintiff. AR 568-583. Dr. Amin noted that Plaintiff complained of depression since his son had died in an accident in August 2005. AR 568-69. Dr. Amin diagnosed adjustment disorder with depressed mood and anxiety. AR 572. Plaintiff reported his sleep was fitful; he felt fatigue, he suffered poor concentration, poor appetite, and feelings of helplessness, frustration and anger. AR 569.

Dr. Amin noted that Plaintiff was "coherent and organized, but there is a lot of tangentiality and looseness of association." AR 571. Plaintiff's mood was depressed, but his affect was appropriate and congruent with thought content. *Id.* Plaintiff's insight and judgment appeared to be intact. *Id.* Dr. Amin determined that Plaintiff could understand, remember, and carry out simple one or two-step job instructions, perform detailed and complex instructions, relate and interact appropriately with co-workers or the public; he could maintain concentration, attention, persistence, pace; and perform work activities without special or additional supervision. AR 573, 575.

**C.    John McGinnis, MFT**

Plaintiff participated in 16 sessions with Marriage and Family Therapist ("MFT") Intern John McGinnis. AR 440. On January 25, 2007, McGinnis prepared an RFC in which he opined that Plaintiff was seriously limited in his ability to" "follow work rules, relate to coworkers, use judgment, interact with supervisors, or relate predictably in social situations." AR 578. McGinnis also opined that Plaintiff had no useful ability to deal with the public, but that he could satisfactorily demonstrate reliability. AR 578. McGinnis further noted that Plaintiff had "recurrent and persistent periods of anxiety, with tension, apprehension and interference with concentration and memory," as well as "persistent phobic or obsessive ruminations with

inappropriate, bizarre, or disruptive behavior." AR 580.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On October 16, 2002, Plaintiff filed a claim for Disability Insurance Benefits ("DIB") alleging disability since March 15, 2000. AR 746. The Social Security Administration ("SSA") denied Plaintiff's claim upon initial and reconsideration determinations. *Id*. Plaintiff filed a timely request for hearing, which was conducted by ALJ Earl J. Waits. AR 25.

ALJ Waits issued a decision on April 23, 2003, finding Plaintiff "not disabled" on the grounds that he retained the RFC to perform medium exertional work activities with occasional bending, stooping, and crawling, and no work around hazards such as heights or machinery." AR 747. ALJ Waits found that Plaintiff could perform a significant number of jobs in the national economy, pursuant to Vocational Expert ("VE") testimony. AR 25. Plaintiff appealed. The Appeals Council denied review on August 23, 2004. *Id*. ALJ Waits' decision became final when Plaintiff did not appeal the decision. *Id*.

On August 24, 2004, Plaintiff re-filed for a period of disability and disability insurance benefits, alleging disability beginning on March 15, 2000. AR 26. The SSA denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits. AR 316-20. Plaintiff subsequently filed a request for reconsideration, which was denied on May 12, 2005. AR 312, 323. Plaintiff filed a request for hearing on June 1, 2005. AR 330. ALJ Robert Wenten conducted two hearings, the first on October 26, 2006 and another on April 10, 2007. AR 26. Following those hearings, on July 7, 2007, ALJ Wenten found that while Plaintiff's mental impairment was sufficient to carry the burden to establish changed circumstances, Plaintiff was nevertheless not disabled. AR 747. The ALJ based this decision on the grounds that Plaintiff retained the same RFC as Judge Waits with the addition of mild-moderate limitations in social functioning. *Id*.

Plaintiff appealed to the Appeals Council and subsequently to the United States District Court. By stipulation for remand, dated May 10, 2010, the District Court remanded the action to the commissioner for further administrative action. AR 747. The ALJ again concluded that Plaintiff was not disabled from March 15, 2000 until March 31, 2006 (Plaintiff's Date Last Insured), within the meaning of the Social Security Act. AR 747.

4

### A. Plaintiff's Testimony

On September 10, 2010 Plaintiff testified that he was not working. AR 901. He testified that since January 2010 his only income was from the trust account set up by his father, which paid him $1,250 per month. AR 901-902. He further testified that he is a high school graduate. AR 903. Plaintiff testified that his only son was killed in 2005 in a vehicular homicide. AR 903. According to Plaintiff, his diabetes and back problems were continuing to worsen; that his inability to control his diabetes led to an automobile accident, and that he had his license suspended as a result. AR 903. Plaintiff testified that he had lost weight and that his weight was approximately 200 pounds, though he had weighed as much as 240 pounds in the past. AR 904.

During his testimony, the ALJ asked Plaintiff about Dr. Ford's medical examinations while he was a patient at Kaiser. AR 908. Plaintiff stated that while at Kaiser he never participated in any testing of his vocational capacity, such as having him "pick things up, or carry things or push a cart," but that Dr. Ford would routinely do reflexes and testing of his ability to bend and stoop. AR 908-09. Plaintiff testified that Dr. Ford did not perform an exam to measure his physical capabilities in the way a qualified examiner would. AR 909.

### B. Vocational Expert's Testimony

Dr. Diana Wong testified on September 20, 2010. AR 913. The ALJ posed several hypotheticals to Dr. Wong. In the first hypothetical the ALJ asked if an individual limited to medium work activities, with only occasional bending, stooping and crawling; with no work around any sort of hazards such as heights or moving machinery, in addition to mild-to-moderate limitations in social functioning, would still be able to perform past relevant work as a driver, warehouseman, janitor, and clerk. AR 914-15. Dr. Wong testified that in that hypothetical, he would still be able to perform the functions of his past relevant work. *Id*. But, Dr. Wong testified that adding obesity would limit body range of motion and gross body movements to 50 percent range of motion such that the individual would not be able to do any of the jobs. AR 916.

The ALJ posed a second hypothetical to Dr. Wong, limiting work to light rather than medium-level work. *Id*. Dr. Wong testified that the individual would be able to able to complete the counter clerk work. AR 917. Dr. Wong concluded if the individual could stand or walk less

1  than two hours a day, he would not be able to perform the counter clerk position, or any sedentary
2  work. AR 918.

### C.  District Court Instructions on Remand

On August 14, 2009 the Office of Disability Adjudication and Review denied Plaintiff's request for review. AR 9. The matter came to the United States District Court for the Northern District of California. AR 682. The action was remanded by stipulation for further administrative action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), sentence four. *Walden v. Astrue*, Case No. 09-CV-4849 CW, Dkt. No. 16.

On remand, the ALJ was instructed to: further evaluate the opinion evidence of Larry Ford, M.D., in accordance with the guidelines set forth in 20 C.F.R. § 404.1527; further evaluate Plaintiff's obesity in accordance with the Social Security Regulation (SSR) 02-1p; reevaluate Plaintiff's ability to engage in past relevant work or other work existing in significant numbers in the national economy; and reevaluate any possible inconsistencies between vocational expert testimony and the Dictionary of Occupational Titles in accordance with SSR 00-4p. *Id*.

### D.  The ALJ's Findings

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. § 404.1520(a). The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id*. (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

In the first step of the analysis, the ALJ must determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not engaged in substantial

1   gainful activity since March 15, 2000. AR 910-11. Thus, a finding of disability was not excluded
2   on the basis of work activity.
3         At step two, the ALJ must determine, based on medical findings, whether the claimant has
4   a "severe" impairment or combination of impairments as defined by the Social Security Act. 20
5   C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20
6   C.F.R. § 404.1520(c). It is important at this step for the ALJ to consider the combined effect of all
7   the claimant's impairments on his or her ability to function, without regard to whether each alone
8   is sufficiently severe. *See Smolen v. Charter*, 80 F.3d 1273, 1289-90; *see also* 42 U.S.C. §
9   423(d)(2)(b); 20 C.F.R. § 404.1523, § 416.923; *Vasquez v. Astrue*, 572 F.3d 586, 594-97 (9th Cir.
10  2009) (citing 20 C.F.R. § 404.1523 when concluding that ALJ did not account for mental
11  impairments when determining RFC). Here, the ALJ determined that Plaintiff's severe
12  impairments are diabetes mellitus, obesity, low back pain, and depression. AR 750.
13        If the ALJ determines that the claimant has a severe impairment in step two, the analysis
14  proceeds to the third step. At this step, the ALJ must determine whether the claimant has an
15  impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R.
16  Part 404, Subpart. P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment
17  either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the
18  diagnosis, he is conclusively presumed to be disabled, without considering age, education and
19  work experience. 20 C.F.R. § 404.1520(d). If a claimant suffers from multiple impairments and
20  none of them individually meet or equal the listed impairment, the collective findings of the
21  claimant's impairments will be evaluated to determine whether they meet or equal the
22  characteristics of any relevant listed impairment. *See* 20 C.F.R. § 404.1526 (b)(3), §
23  416.926(b)(3); *see also Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). "An ALJ is not
24  required to discuss the combined effects of a claimant's impairments or compare them to any
25  listing in any equivalency determination, unless the claimant presents evidence in an effort to
26  establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). Here, the ALJ
27  determined that "the medical evidence failed to support a finding that the severe impairments of
28  diabetes mellitus, obesity, low back pain, and depression met or medically equaled the criteria for

the listed impairments, as opined by the State agency medical consultants." AR 750. Thus, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or equals the listings. AR 750.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the mentally determinable impairments that are non-severe. 20 C.F.R. § 404.1545(e). In this case, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 CFR 404.1567(b) with no more than occasional bending, stooping, or crawling; with 75 percent of the full range of motion in bending, stooping and crawling because of his obesity. The ALJ also found that Plaintiff should avoid hazardous locations and participate in only simple interactions with people, less frequently. AR 751.

The ALJ stated that he considered Plaintiff's low back injury, diabetes, weak kidneys, high cholesterol, and high blood sugar, as well as dizziness and an inability to stand or sit for long periods of time. AR 752. Despite this, the ALJ found that "the medical evidence of record does not support the Plaintiff's allegations of a complete inability to work during the period of April 24, 2004 to March 31, 2006." AR 752.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. § 404.1520(a)(iv)(4), (f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Here, Plaintiff's past relevant work was as a driver, warehouseman, janitor, counter clerk, and retail sales clerk. AR 914. The ALJ concluded that Plaintiff could not perform those jobs in accordance with the VE's testimony. AR 755. Thus, Plaintiff is unable to perform past relevant work.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there

are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). Here, relying on the VE's testimony regarding the ALJ's hypothetical, he determined that Plaintiff can perform the full range of sedentary work and is therefore not disabled. AR 755-56. In reaching this conclusion, the ALJ weighed the credibility of the VE as well as that of the Plaintiff and his treating physician. The ALJ concluded that the Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." AR 751-57.

Thus, the ALJ determined that Plaintiff satisfied the criteria for step one, two and four – he was not engaged in substantial gainful activity, he suffered from "severe" impairment and was not capable of performing any of his past relevant work. The ALJ nevertheless determined that Plaintiff's "severe" impairment or impairments did not meet or equal a listed impairment and that Plaintiff could perform light work, which is sedentary in nature. The ALJ found that such jobs existed in significant numbers in the national economy. *See* 20 C.F.R. § 416.967 (defining "light work"

### E.     The ALJ's Decision and Plaintiff's Appeal

On January 19, 2011, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 741. This decision became final when the Appeals Council declined to review it on August 13, 2012. AR 727-33. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On August 19, 2013, Plaintiff filed the present Motion for Summary Judgment. Dkt. No. 9. On September 16, 2013, the Commissioner filed a Cross-Motion for Summary Judgment. Dkt. No. 13.

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence" means more than a scintilla, but less than a preponderance of evidence that a reasonable person might accept as

1  adequate to support a conclusion. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The
2  court must consider the administrative record as a whole, weighing the evidence that both supports
3  and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).
4  However, where the evidence is susceptible to more than one rational interpretation, the court
5  must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).
6  Determinations of credibility, resolution of conflicts in medical testimony, and all other
7  ambiguities are to be resolved by the ALJ. *Id*. Additionally, the harmless error rule applies where
8  substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127,
9  1131 (9th Cir. 1990).

## DISCUSSION

**A.   The ALJ Provided Clear and Convincing Reasons for Assigning Little Weight To Dr. Ford's Opinion**

On April 29, 2006, Dr. Ford opined that Plaintiff could stand or walk for less than 2 hours in an 8–hour work day, could sit for about six hours in an 8–hour workday, could lift 20 pounds and could occasionally climb, balance, stoop, and crouch. AR 566-67. Dr. Ford opined that the extent of these limitations would be life-long due to Plaintiff's diabetes. AR 567. The ALJ did not fully credit this opinion, finding it diminished by the lack of persuasive objective medical evidence in the record. AR 754. Plaintiff argues that this was error. Pl. Mot. at 4.

When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *Zamora v. Astrue*, 2010 WL 3814179, at *3 (N.D. Cal. Sept. 27, 2010). In deciding how much weight to give to any medical opinion, the ALJ considers the extent to which the medical source presents relevant evidence to support the opinion. 20 C.F.R. § 416.927(c). Generally, more weight will be given to an opinion that is supported by medical signs and laboratory findings, and the degree to which the opinion provides supporting explanations consistent with the record as a whole. *Id*.

"By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. §

404.1527). If a claimant has a treatment relationship with a provider, and that provider's opinion is supported by clinical evidence and not inconsistent with the record, the provider will be given controlling weight. 20 C.F.R. § 416.927(c)(2). "The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

If the treating physician's opinion is not contradicted by another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir.2008). If the treating physician's opinion is contradicted by evidence in the record, then the ALJ may reject the opinion only if there are "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. "If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Social Security] Administration considers specified factors in determining the weight it will be given." *Id*. "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Id*. (citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii)). However, "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228 (quoting *Thomas*, 278 F.3d at 957); *see also Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (treating doctor's opinion properly rejected when treatment notes "provide no basis for the functional restrictions he opined should be imposed on [claimant]"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings"); Orn, 495 F.3d at 631 (a treating physician's opinion will be afforded great weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques").

As Dr. Ford's opinion was not contradicted, the ALJ was required to provide clear and

11

1 convincing reasons for not fully crediting that opinion. *Carmickle*, 533 F.3d at 1164. The ALJ
2 complied with this requirement, finding that Dr. Ford's opinion was not supported by the objective
3 medical evidence and was not consistent with the record. AR 754. The ALJ first noted that the
4 limitations that Dr. Ford assessed were inconsistent with his treatment records, which generally
5 showed that Plaintiff was alert and appeared well, presenting with no distress and no acute
6 problems. AR 541, 564, 566-67, 753-54. The ALJ next found that the cause of Plaintiff's
7 variable blood sugar appears to be Plaintiff's failure to adhere to a diet or increase his exercise
8 rather than uncontrolled progression of the condition. AR 754. The ALJ also found there was no
9 evidence of diabetic neuropathy or other diabetes-related problems. *Id*. Last, the ALJ found that
10 Plaintiff's own statement contradicts Dr. Ford's opinion and the level of limitations. AR 755.
11 Accordingly, the ALJ properly rejected the treating physician's opinion because it was
12 inconsistent with the record as a whole. *Batson v. Comm'r of Soc. Sec*., 359 F.3d 1190, 1195 (9th
13 Cir. 2004); *McCoy v. Astrue*, 2009 WL 1657445, *8 (C.D. Cal. Jun.12, 2009) (ALJ provided
14 specific and legitimate reasons for giving less weight to treating physician opinion that was
15 unsupported by the record as a whole).

16 Plaintiff argues that Dr. Ford's opinion is supported by the record and thus should have
17 been adopted by the ALJ. Pl. Mot. at 4. However, Plaintiff does not point to any objective
18 medical evidence in the record to support this argument. While the Court finds that Dr. Ford's
19 notes do identify various diagnoses such as diabetes, they do not identify any functional
20 limitations and rarely document any symptomatic problems. Plaintiff may point out that these
21 progress notes occasionally indicated that his diabetes mellitus was not controlled. *Id*. However,
22 the notes do not show that Plaintiff reported that his diabetes had caused any acute problems that
23 would prevent him from standing or walking for more than two out of eight hours in an 8-hour
24 workday. *Id*. Additionally, other progress notes indicated that Plaintiff was not compliant with
25 his diabetes treatment by failing to adhere to a diabetic diet, making poor food choices, and not
26 exercising. *Id*. Plaintiff fails to identify any record evidence supporting the extreme limitations
27 identified by Dr. Ford.

28 The ALJ also properly gave little weight to Dr. Ford's opinion because the limitations that

Dr. Ford assessed were inconsistent with Plaintiff's treatment records, which generally showed that Plaintiff was alert and appeared well, presenting with no distress and no acute problems. AR 541, 564, 566-67, 753-54. Dr. Ford's RFC states that the limitations assessed were based on Plaintiff's diabetes, but there were no objective findings in the treatment records associated with diabetes to support Dr. Ford's opinion and the degree of limitation that he opined. AR 566-67, 754. Further, Plaintiff's own statements contradicted Dr. Ford's opinion. AR 566-67, 754-55. Plaintiff reported being able to perform all activities of daily living such as household tasks and driving a car. AR 149-51, 755. A conflict between a doctor's opinion and the claimant's daily activities is a legally sound reason to discount the opinion. *See Fisher v. Astrue*, 429 F.Appx. 649, 652 (9th Cir. 2011). The ALJ also found that the record was "replete with evidence that [Plaintiff] admitted he was not adhering to a diet and made bad choices," and did not heed instructions to exercise. AR 755. A claimant's failure to follow prescribed treatment without adequate explanation is relevant to a credibility analysis. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

       The ALJ also considered Plaintiff's obesity, and its possible effects on residual functional capacity as stated in SSR 02-1p. AR 754. The ALJ referred to the body mass index and correctly assessed that "there is no medical evidence in the record that supports additional obesity-related restrictions." AR 754. The ALJ noted that Plaintiff's body mass fluctuated between 31 and 34 for the relevant time period. *Id*. The ALJ found that Plaintiff's slight obesity could potentially limit Plaintiff's ability to perform the full range of postural, but that there is no medical evidence in the record that supports additional obesity-related restrictions. *Id*. For instance, there is nothing in the record suggesting that Plaintiff was unable of performing the standing/walking or lifting and carrying identified in the ALJ's RFC. *Id*. The ALJ also noted that Dr. Ford's assessment of Plaintiff's limitations "[did] not even really suggest any limitations due to [Plaintiff's] obesity," as supported by the fact that Dr. Ford's RFC listed only diabetes as the cause of Plaintiff's limitations. *Id*. The ALJ also found that Plaintiff failed to present evidence of a nexus between obesity and additional limitations, or suggest any theory under which he could find aggravation or exacerbation due to this condition. *Id*.

1    Based on this record, the Court finds that the ALJ properly concluded that Plaintiff's
2 reported activities and abilities were not inconsistent with the capacity for the restricted range of
3 light work.  AR 751.  Accordingly, the Court finds that the ALJ's decision is supported by clear
4 and convincing evidence in the record as a whole and is based on proper legal standards.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Cross-Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: August 12, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge